42 So.2d 796

### ALABAMA–GEORGIA SYRUP CO. v. STATE.

#### 3 Div. 528.

Supreme Court of Alabama.

Nov. 10, 1949.

Fred S. Ball, Jr., of Montgomery, for appellant.

Spain, Gillon, Grooms & Young, of Birmingham, for Birmingham Paper Co., amicus curiæ.

A. A. Carmichael, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellee.

STAKELY, Justice.

This case involves an interpretation of the Use Tax statutes as applied to (1) fiber box containers, (2) barrel containers and (3) platform trucks.

On July 16, 1947 the State Department of Revenue notified Alabama-Georgia Syrup Company (appellant) that on the aforesaid date it made an order making final an assessment against it on June 6, 1947 for

use tax under the provisions of the Alabama Use Tax Act, § 787 et seq., Title 51, Code of 1940, for the period of April 1, 1944 to March 31, 1947, with penalty and interest thereon in the total amount of $922.63. An appeal from the assessment was duly taken to the Circuit Court of Montgomery County, in Equity, pursuant to § 140, Title 51, Code of 1940 and a bill of complaint was then filed by the Alabama-Georgia Syrup Company as required by the statute setting out the facts with reference to the items on which the assessment was based. The State of Alabama demurred to the bill. The court sustained the demurrers thus in effect holding the Company liable for each item of the assessment. This appeal is from that decree.

### Fiber Boxes

We quote from the bill as follows:

"3. Appellant further shows that it is engaged in the syrup business with the principal place and plant located in Montgomery, Alabama. Its business operation generally consists of the accumulation at its said plant in suitable tanks and in barrels kept in cold storage at its said plant of cane syrup, sugar and other ingredients, and all machinery and equipment and other facilities necessary to process, blend, mix and compound its product, namely, syrup, and the syrup is then either bottled in various sized labelled bottles or cans and the bottles or cans are then packed in fiber boxes containing from six to twenty-four bottles or cans, depending on the size of bottle or can, and this unit is then called a case, and this is the unit sold by appellant. Appellant does not sell individual bottles or cans but always sells by the case. Part of the assessment appealed from is with reference to the fiber boxes which are the containers of the syrup sold in wholesale quantity by appellant to licensed merchants, jobbers, dealers or other wholesalers for resale. The said fiber boxes are commonly used by appellant to contain or hold, preserve and market a given unit of syrup packed in bottles or cans and the title to said boxes passes to the next purchaser with the unit of merchandise."

\*    \*    \*    \*    \*    \*

"5. The fiber boxes are furnished to appellant's customers in the purchase of a case of syrup and are furnished containers within the meaning of the definition of a 'wholesale sale' as hereinabove set out. The total purchase price of the fiber boxes included in said assessment is $31,781.48."

Use tax applies only to retail purchases. Section 788, Title 51, Code of 1940, provides that, "An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail". A retail sale is defined as all sales other than wholesale sales in § 787, Title 51, Code of 1940, as follows: "(e) The term 'sale at retail' or 'retail sale' shall mean all sales of tangible personal property except those above defined as wholesale sales." Wholesale sales are defined in § 787(d), of Code of 1940, Title 51 as follows: "(d) The term 'wholesale' or 'sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers not for resale. The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof."

The Alabama-Georgia Syrup Company is a manufacturer or compounder of syrup. It buys bottles, cans and fiber boxes or cartons which it furnishes in selling its product for resale. However neither bottles nor cans were included in the assessment. The position of the State seems to be that the fiber boxes or cartons are used by the appellant for its convenience for storing and shipping cans and bottles of syrup and not as containers. Furthermore that appellant uses bottles or cans as containers in marketing its blended or compounded product viz. syrup or molasses and that the fiber boxes are not embraced within the term the "furnished container." There is no contention by counsel that the

52

fiber boxes are exempt under the provsions of subsection (k) of § 789, Title 51, Code of 1940. The question is whether the use tax statute applies to them. Referring to allegations quoted from the bill, the unit sold by the appellant to licensed merchants, jobbers, dealers or other wholesalers for resale is the fiber box in which are packed the bottles or cans of syrup which is called a case. Only cases are sold, not individual bottles or cans and title to the fiber box or carton passes to the purchaser.

We quite understand that while "taxing statutes are to be construed strictly against the State in favor of the taxpayer" yet this rule "does not impinge upon the all prevailing rule that a statute is to be construed in accordance with its real intent and meaning, and not so strictly as to defeat the legislative purpose." National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478, 480; Dixie Coaches, Inc., v. Ramsden, 238 Ala. 285, 190 So. 92.

In an effort to arrive at a correct interpretation of the Use Tax Statutes, the State has cited four Alabama cases as follows: City Paper Company et al. v. Long et al., 235 Ala. 652, 180 So. 324; Birmingham Paper Co. v. Curry, 238 Ala. 138, 190 So. 86; Durr Drug Co. v. Long et al., 237 Ala. 689, 188 So. 873; Poer v. Curry, 243 Ala. 76, 8 So.2d 418. To estimate properly the effect of these cases, it will be helpful to consider briefly the history of the revenue acts of the state beginning in 1935. On July 10, 1935, the General Revenue Act of Alabama was rewritten. General Acts 1935, p. 256. This act was amended December 17, 1936 by adding Schedule 155.4A and Schedule 155.4B to § 348, imposing a privilege or license tax on chain stores and amusements. Acts 1936-37, Extra Session, p. 1. On February 23, 1937 the chain store and amusement tax amendments above mentioned were repealed and a privilege or license tax assessed against gross sales or gross receipts and a clause inserted therein which was in effect a use tax. General Acts 1936-37, Extra Session, p. 125. We shall refer to this last enactment as the 1937 Law.

The 1937 law was superseded by the present sales tax act, General Acts 1939, p.

16, § 752 et seq., Title 51, Code of 1940, and on February 28, 1939, the Use Tax Law of 1937 was superseded by the present Use Tax Law, General Acts 1939, p. 97, § 787 et seq., Title 51, Code of 1940. Effective October 1, 1943, subsection (u) was added to section 755 and exempted from the Sales Tax "the gross proceeds of the sale or sales of wrapping paper, wrapping twine and paper bags" (Acts 1943, p. 435) and effective October 1, 1943, subsection (u) was added to § 789 and exempted from the use tax "wrapping paper, wrapping twine and paper bags" (Acts 1943, p. 439).

The case of City Paper Company et al. v. Long et al., supra., was based upon the 1937 law and accordingly the court did not have before it any exemption of wrapping paper, wrapping twine and paper bags. The court decided that such containers and closure materials were retail sales and taxable. In that decision it was pointed out that consumption by the buyer stamped the transaction as a retail transaction, that a sale became retail and could not be called wholesale when made to one who destroyed its identity as tangible personal property moving in commerce, that use by the seller as distinguished from resale by him was the determining factor in the assessment of the tax.

In considering the case of Birmingham Paper Co. v. Curry, supra, it should be remembered that the 1937 law was then in effect and the definition of "wholesale sale" contained no mention of containers or closure materials. On the contrary the definition of "wholesale sale" in that law (unlike the definition in the present law) included in "wholesale sales" only those sales to manufacturers of tangible personal property "which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures". Under this language in the 1937 law this court held that containers and closure materials sold to manufacturers were in effect sales to consumers and were not "wholesale sales."

In the case of Durr Drug Co. v. Long, supra, this court was again dealing with the 1937 law and held that containers and closure materials sold to druggists were

sales to users and not to resellers and so subject to the sales and use tax acts.

■ The only one of the foregoing decisions cited by the State to consider the present law is Poer v. Curry, supra [243 Ala. 76, 8 So.2d 421], and that decision indicated a change in the law by reason of changes in the statute when it states that, "No doubt the definitions found in the Use Tax Act, and in the 1939 amendment to the Sales Tax Act, bear the influence of the decision in the case of City Paper Co. v. Long, supra." The present law includes containers in the definition of "wholesale sale" where a manufacturer or compounder is concerned. It seems reasonable to us that in making this change in the law the legislature recognized the impracticability of attempting to foresee the uses to which the containers would be put in the transition to manufacturers or compounders and then to their customers with the consequent uncertainty to the sellers of deciding when to collect and when not to collect taxes from their buyers. So we consider that the term "furnished container" has reference to containers which are sold to manufacturers or compounders for use in packing their products for sale and which are sold by the manufacturer or compounder along with or as a part of their product. As persuasive of this interpretation is the fact that this is the administration construction placed on this statute in 1939 and again in 1944. Dixie Coaches v. Ramsden, 238 Ala. 285, 190 So. 92.

■ We have now reached the question as to whether the term "furnished container" in cases of multiple containers applies only to the inner container. Upon consideration we think that the fiber boxes or cartons under the facts in this case should be regarded as containers. Bottles or cans of syrup are placed therein and together they constitute the unit of merchandise which is sold to the purchaser as a case. Appellant does not sell individual cans or bottles but only by case. There is nothing in the statute which says that the product shall have actual contact with the container. Nor does the statute say that when there is more than one container of the product, only the inner container is to be excluded from the tax. As it is not denied that the fiber boxes are "furnished", they seem to us to qualify for exclusion from the tax under the statute.

## Barrels

We set out as follows the allegations of the bill with reference to the assessment as to barrels.

"8. Part of the assessment appealed from is with reference to barrels, the total purchase price of which was $5,051.24. Appellant purchases barrels which are sent to the farmers raising sugar cane and cooking it into syrup ready for blending by appellant and the barrels are then filled with the syrup and are sent to appellant's plant in Montgomery where they are placed in cold storage until blended, bottled or canned. Appellant avers that the barrels are used in preparing agricultural products for market and are exempt."

■ It is contended that the assessment should not have been made as to barrels because § 789 (k), Title 51, Code of 1940, exempts barrels "used in preparing agricultural products * * * for market." According to the allegations of the bill the barrels are used by appellant in purchasing syrup and in storing it in cold storage in its plant in Montgomery until the contents of the barrels are blended, bottled or canned. These barrels are not furnished by the appellant to the purchasers of its blended or compounded products. We do not think that the barrels come within the exemption. It is enough to say that the barrels are not sold or furnished by the seller of the products contained therein to the purchaser of such product as required by the statute. § 789(k), Code of 1940. This case is to be distinguished from State v. Wertheimer Bag Co.,[1] 43 So.2d 824, wherein it was held that burlap bags sold by appellee to owners and operators of peanut hullers who prepared the products for market were exempt under said § 789(k) as being used in preparing agricultural products for market.

The ruling of the court was correct as to barrels purchased by appellant.

1. Post, p. 124.

### Platform Trucks

█ The last item is the tax assessed on the platform trucks used for moving the company's products in the process of blending and packing the syrup in the plant. The exemption as to machines in § 789(q), Title 51, Code of 1940, is as follows: "(q) Machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

We do not think that platform trucks are machines within the meaning of the exemption. They are obviously used in transportation from one point in the plant to another and not in the compounding and manufacturing of tangible personal property. Burford-Toothaker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420; Curry v. Alabama Power Company, 243 Ala. 53, 8 So.2d 521. The ruling of the court was correct in this regard.

Affirmed in part and in part reversed and remanded.

BROWN, FOSTER and LAWSON, JJ., concur.